### BOYCE *v.* BARKER.

1. SALE OF LOGS—DISPUTED SCALE.
    Where the buyer and seller of logs agree that each shall furnish a scaler, but the buyer subsequently directs his scaler to act independently of the seller's, the seller cannot insist that his scale is conclusive, in the absence of a demand for a joint scale, but the question as to which was the correct scale is for the jury.

2. SAME—EVIDENCE—HARMLESS ERROR.
    Error in admitting evidence of an *ex parte* rescale of the logs was cured by the court's subsequently striking out such testimony, and instructing the jury to consider only the original scales.

3. SAME—COMPROMISE.
    One who promised to pay a disputed balance for logs purchased if, on sawing a specified number of them, they did not go 70 per cent. culls, is not bound thereby, where the other party selected only the best logs for the trial, and did not attempt to get at their average.

Error to Bay; Maxwell, J. Submitted October 4, 1898. Decided January 3, 1899.

*Assumpsit* by Jonathan Boyce against Columbus C. Barker for goods sold and delivered. From a judgment for plaintiff for less than the amount claimed, he brings error. Affirmed.

*J. L. Stoddard,* for appellant.

*T. A. E. & J. C. Weadock,* for appellee.

MONTGOMERY, J. This is an action brought by the plaintiff to recover the purchase price of a quantity of logs. The plaintiff recovered a verdict of $846.70, but has brought error, and insists that he was entitled to receive nearly $4,000, but failed because of erroneous rulings of

the trial judge. The chief controversy arises over the scale of the logs. The plaintiff, by a written contract, agreed to sell, and defendant agreed to purchase, at least 5,000,000 feet of logs. It was agreed that each of the parties should furnish a good, reliable, and competent scaler, each at his own expense, to scale by Scribner's rule; that the logs should be scaled on the skids along the railroad track; and that the scalers should determine the amount of logs scaled. Plaintiff engaged one Oleson to scale under the contract, and defendant employed one Reilley, and both began scaling on October 27, 1896. The first day they scaled separately. Oleson's scale was 920 pieces, scaling 165,140, and Reilley's 923 pieces, scaling 156,060. The next day they began scaling together, and continued to so scale up to and including November 2d. The scale during this time substantially agreed. On the 5th and 6th of November, Reilley was absent at Bay City. Oleson scaled alone during this time, but on his return Reilley accepted Oleson's scale, and reported it to defendant as his own. The scale of these two days is not questioned. It appears that when the two scalers commenced work they were not instructed to scale together. The plaintiff's foreman told Reilley that he had better go ahead and mark what logs he wanted to leave, and that Oleson would leave the same logs out, and they so commenced this work, but at first no effort was made to harmonize the scale. As before stated, the two scalers did harmonize the scale between themselves for the two days, but on the return of Reilley, on November 9th, he began scaling by himself again, having been instructed by defendant's foreman so to do. He continued scaling until November 13th, he and Oleson making separate scales. Mr. Hood, another scaler employed by defendant, took Reilley's place, and scaled until December 18th, the two scalers acting independently. On the 21st the parties discovered a disagreement in the scale, and met at the camp, and, Barker being of the opinion that Oleson's scale was faulty only with reference to the butt logs, it was agreed that plaintiff should take out the butt logs, and that de-

fendant would accept Oleson's scale from that time forward. This was carried out, and no controversy arises over the subsequent scale. There was therefore a quantity of 3,429,680 feet as to which the parties agreed. But the scale of the remainder by Oleson was 2,114,940, while the scale made for the defendant by Reilley and Hood was but 1,843,060, showing a difference of 271,880.

The plaintiff's counsel asked an instruction as follows:

"It appears from the undisputed evidence in this case that the defendant broke the contract in forbidding his scaler to make a joint scale as provided in the contract, and that the plaintiff had at all times a competent and reliable scaler at the place agreed upon under the contract, and that, upon the refusal of defendant's scaler to make a joint scale with him, he, the plaintiff's scaler, did make a complete scale of the logs with a rule and at the place agreed upon; and I charge you that there is no evidence in this case of any fraud or gross mistake in such scale, that it is binding upon both parties, and that the plaintiff is entitled to recover in this suit for the logs sold and delivered according to the scale made by the scaler Oleson."

This was refused, and in lieu thereof the court charged, on its own motion, that,—

"When Barker or his foreman told the inspector he sent there not to join Oleson in the inspection, Boyce might have terminated the contract, and refused to have it fulfilled, and Barker would have been liable for any damages that might have arisen for that reason. He did not do it. I suppose he waived it."

We think this instruction sufficiently favorable to the plaintiff. No demand was made for a joint scale, and, under these circumstances, we do not think the plaintiff entitled to insist that his scale is conclusive. It was therefore a question for the jury as to which was the correct scale as to the logs in dispute.

It is insisted there was error in the admission of testimony bearing on this point. Testimony was offered of scales of 32 trains of logs, and of the mill scale of the lumber of the same logs. It was claimed that these 32 trains of logs contained all the logs except those which were

scaled by Oleson under the new agreement. The testimony was objected to on the ground that the scale included a rescale, *ex parte*, of logs which had been scaled by the two scalers under the contract, and which scale was conclusive. Counsel cites *Busch* v. *Kilborne*, 40 Mich. 297. It appears that the circuit judge struck out the testimony of these other scales, and in his charge to the jury limited the inquiry to the two scales. We do not think we should, under the circumstances, treat this trial as a mistrial.

The same consideration disposes of the question of the two witnesses Bennett and McClennan, as well as of the objections relating to the manner of making up the Hamet & Trumpour scale, which was afterwards stricken out.

The only other question which merits attention relates to an alleged settlement. Plaintiff testified that at one time defendant said to him:

" If you will have 100 of these butt logs sorted out, and put them in a pocket by themselves, and saw them by themselves, if they do not go 70 per cent. culls, I will pay the difference without another word; that is, the difference between us."

Lewis Koash, a witness for the plaintiff, did the sawing, and he testified in relation thereto as follows:

"Boyce told me he wanted sound butt logs selected. He told me to sort out the best of those butt logs I could get,—no defective logs; but they were all defective or shaky, and there was a lot of those logs that were rotten, and those logs he didn't want put in. I guess I fell short about 15 logs, and I had to go back and sort over what I had left to even up my 100 logs, so that the 100 logs that I selected were the very best sound butt logs that I could find in the whole lot. I got the best I could,—the best there was,—and that was none too good."

The agreement, as testified to by plaintiff, did not contemplate selecting the best logs. It is evident that the purpose was to get at the average of the logs. The method resorted to did not accomplish this result.

The judgment will be affirmed.

The other Justices concurred.